**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jorge BELL, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lorenzo Rivas CRUZ, Defendant–
Appellant.**

**Nos. 90–5727, 90–5728.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1991.

Decided Jan. 21, 1992.

As Amended March 2, 1992.

Urs Roland Gsteiger, Petree, Stockton & Robinson, Winston–Salem, N.C., argued, for defendant-appellant Bell.

David Ferris Tamer, Law Offices of David F. Tamer, Winston–Salem, N.C., argued, for defendant-appellant Cruz.

Paul Alexander Weinman, Asst. U.S. Atty., Greensboro, N.C., argued (Robert H. Edmunds, Jr., U.S. Atty., on brief), for plaintiff-appellee.

Before MURNAGHAN, Circuit Judge, HERLONG, District Judge for the District of South Carolina, sitting by designation, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

OPINION

MURNAGHAN, Circuit Judge:

On June 25, 1990, the United States Grand Jury for the Middle District of North Carolina returned a four count indictment against Gregorio Peguero, Jorge Bell, Lorenzo Cruz, Jose Fernandez, and Eustaquio Sosa. The five defendants were charged with conspiracy to possess with intent to distribute marijuana, "crack" cocaine, and cocaine, and with specific incident possession offenses.

All five defendants were charged with conspiracy to possess with intent to distribute the sum of four separate quantities of drugs, found at four different locations at different times. Defendants Bell and Cruz were charged, in addition to the conspiracy, with possession of 13.55 grams of "crack" cocaine. The indictment also included a weapons possession count that was later dropped by the government at the start of the trial.

Cruz and Bell were arraigned in the United States District Court for the Middle District of North Carolina in Winston–Salem on July 3, 1990. A jury found them guilty on all counts charged. Both defendants moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29. Both motions were denied.

At a sentencing hearing on November 2, 1990, the district judge calculated a 151–188 month sentencing guideline range for Bell, sentencing him to 165 months plus five years of supervised release. He calculated a 121–151 month range for Cruz, and sentenced him to 134 months plus five years of supervised release.

We affirm the possession conviction, but reverse the conspiracy conviction and hence remand for resentencing pursuant to our findings.

I.

Evidence of various activities of defendants was presented at trial. On March 17, 1990, Bell was cited in Maryland for a moving violation while driving a 1979 Oldsmobile, a car registered in the name of Leocadio Reyes.

On April 18, Cruz was observed by a law enforcement officer driving a gold 1988 Ford Taurus near 1212 East 12th St. in Winston–Salem, an area of extensive drug trafficking, according to law enforcement officials.

On April 19, Bell was again cited, this time in North Carolina, for speeding while driving the Oldsmobile registered in Reyes' name. Bell also was observed at least one other time driving the 1979 Oldsmobile by law enforcement officials.

On April 20, a residence at 535–D Martin Luther King Drive in Winston–Salem was searched by officers of the Bureau of Alcohol, Tobacco and Firearms and the Winston–Salem Police. The only person in the apartment at the time of the search was Peguero, Bell and Cruz's alleged co-conspirator. No evidence was presented at trial as to who was the legal resident of the apartment, but keys to its door were found on Peguero during the search. Also uncovered in the search were: 30.71 grams of "crack" cocaine found in a brown paper bag on the second floor landing at the top of a staircase; the two traffic citation receipts for the violations by Bell operating the 1979 Oldsmobile plus two more traffic tickets issued to Bell, found in a shirt hanging in a closet in one of the bedrooms; a series of photographs picturing Bell: one with him standing near the entrance to the 535–D apartment, one with him and Peguero standing by a green Volvo, one with Bell standing by the 1979 Oldsmobile and one with Bell in front of the gold 1988 Taurus Cruz had been seen driving on April 18. There were no fingerprints of either Cruz or Bell found in the apartment.

On April 26 at approximately noon, Cruz was observed leaving a residence at 1926 Pleasant Street in Winston–Salem by a lieutenant on the Winston–Salem police force. Cruz was driving a maroon Chevrolet. The police officer proceeded to follow Cruz for about twenty minutes. Finally, Cruz pulled over, exited his car and demanded of the plain clothes officer to know why he was being followed. The officer informed Cruz that he was a police officer, and Cruz, leaving the car parked by the side of the road, left the scene on foot.

Later that same day, at 11:30 P.M., Bell was stopped for operating the 1979 Oldsmobile without headlights. Cruz and another alleged coconspirator, Jose Fernandez, were passengers in the car, with Cruz in the backseat. The two passengers slowly began to walk off in opposite directions after the car had come to a stop. The two patrol officers detained all three men, and soon joined by five other local and federal officers, began to search the car. Bell stayed near the car and carried on a conversation with one of the policemen. Cruz and Fernandez were led to a curb some distance from the car, where they sat down and remained calm and quiet for a time.

One of the officers noticed in his search that the backseat of the Oldsmobile was not tightly fixed to the floor of the car, and he removed the seat and began to search underneath it. At this point, observing the car being dismantled, Cruz and Fernandez became excited, exclaiming: "They're tearing it apart. They're tearing the car apart!"

The officers found a secret compartment under the backseat, but could not find the opening mechanism for it for some time. After about twenty minutes, two switches were found under the dashboard near the ashtray which opened the compartment. Inside the police found 13.55 grams of "crack" and a loaded 9mm pistol. A police scanner, useful in monitoring police radio communications, was also found in the front seat. No fingerprints were obtained from the drugs or the gun. No drugs, weapons, or excessive amount of cash were found on either Cruz or Bell. Cash totaling $950.00 was recovered from Fernandez.

On April 28, officers went to the residence at 1929 Pleasant Street. Two occupants of the house, including the fifth alleged coconspirator, Eustaquio Sosa, gave permission to search the premises. In the house the officers discovered nearly $19,500 in a bedroom, and a notebook with cryptic entries including names and numbers. In the garage two cars were found: a green Volvo (pictured with Bell and Peguero in one of the photos found at 535–D Martin Luther King Drive) and a gold Taurus (also pictured with Bell in one of the photos, and the same car Cruz had been seen driving on April 18).

A search of the cars uncovered a secret compartment in the gold Taurus quite sim-

ilar to the one in the 1979 Oldsmobile. Traces of cocaine were found in the compartment, and $28,810 was also found in the car. In the trunk of the green Volvo $25,900 was found. A small bag of green vegetable matter, later determined to be marijuana, also was found in the garage.

## II.

■ Defendants Bell and Cruz were arraigned on two separate counts; the first for possession with intent to distribute the 13.55 grams of "crack" found in the car they were riding in on April 27, and the second for conspiring to distribute "crack", cocaine, and marijuana more generally between February 2 and April 28, 1990. The district court properly denied defendants' motions for acquittal as to the possession count. Accordingly, we affirm that decision.

■ "Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the item." *United States v. Zandi*, 769 F.2d 229, 234 (4th Cir.1985). Of course, knowledge of the presence of the controlled substance is essential to an assertion of constructive possession. *United States v. Schocket*, 753 F.2d 336, 340 (4th Cir.1985). "[P]ossession need not be exclusive, but may be shared by others, and is susceptible of proof by circumstantial as well as direct evidence." *United States v. Laughman*, 618 F.2d 1067, 1077 (4th Cir. 1980).

■ Intent to distribute a controlled substance may be inferred by a jury from the quantity of drugs found in the defendant's possession. *United States v. Roberts*, 881 F.2d 95, 99 (4th Cir.1989). The thirteen plus grams of crack found in the Oldsmobile is a "large quantity", supporting the factfinder's inference that an intent to distribute existed. *Id.*

■ In analyzing the case at hand, and reviewing the denial of a motion for acquittal, "... we must review the evidence and all reasonable inferences arising from it in the light most favorable to the government," *Laughman*, 618 F.2d at 1076 (citing *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)), as we determine whether a factfinder could have inferred, beyond a reasonable doubt, that the crime was committed. *United States v. Anderson*, 611 F.2d 504, 508 (4th Cir.1979).

When there is no actual possession of the contraband, as here, because the drugs are hidden in an elaborate compartment, constructive possession must be shown. In *United States v. Grubbs*, 773 F.2d 599 (4th Cir.1985), we had the opportunity to address a situation in which drugs were cleverly concealed, and the appellants argued that they had no knowledge of their presence.

In *Grubbs*, Coast Guard officials boarded a boat suspected of carrying drugs. They searched the boat for more than thirty minutes, and found nothing. Undaunted, the officials maintained radar surveillance of the boat, and intercepted it again later. A second search indicated a significant weight discrepancy on the vessel, and it was taken back to shore where a final search uncovered a significant quantity of drugs. In that case, the defendants contended that they had no knowledge of the well-hidden marijuana.

The *Grubbs* court ruled that the totality of the circumstances of the arrest, and the alleged possession, were relevant in determining whether knowledge could be imputed to the defendants. We noted that "the jury was entitled to give weight to the circumstances surrounding appellant's apprehension and arrest." 773 F.2d at 602. Moreover, we ruled that "[t]aken as a whole, the evidence in this case is clearly sufficient to allow a jury to infer that each defendant had knowledge of the void areas on the ship and the bales of marijuana ..." *Id.*

The case at hand presents facts strikingly similar to those in *Grubbs*. There is ample evidence, albeit primarily circumstantial, allowing for a reasonable inference on the part of the jury that both of the defendants knew of the drugs in the secret compartment in the 1979 Oldsmobile. The issue on appeal is not whether we are convinced by the evidence on the record,

but whether a trier of fact could have reasonably been convinced. The case against Bell is stronger since he was obviously extensively familiar with the vehicle in which the drugs were found. But Cruz' presence in the car, his brief attempt to leave the scene at the time the car was stopped, his apparent relationship with Bell on other occasions, and his "nervous" response to the search, are sufficient, though barely so, to allow for an inference by the jury free of "reasonable" doubt. The motion for acquittal of possession of 13.55 grams of crack cocaine was properly denied.

### III.

Bell and Cruz, along with three others, were also convicted of conspiring to possess with the intent to distribute various drugs. The district court erred in not granting defendants' motion for acquittal as to the conspiracy charge.

█ In order to support a conviction for conspiracy, the government must show, first, that a conspiracy existed; then, that the defendant had knowledge of the conspiracy; and finally, that the defendant voluntarily became a part of the conspiracy. *United States v. Badolato*, 701 F.2d 915, 920 (11th Cir.1983). "Proof of conspiracy may of course be by circumstantial evidence; it need not and normally will not be by direct evidence." *United States v. Giunta*, 925 F.2d 758, 764 (4th Cir.1991). Complete knowledge of all aspects of the conspiracy is not required:

> [O]ne may become a member of a conspiracy without full knowledge of all of its details, but if he joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy, even though he had not participated before, and even though he played only a minor part.

*United States v. Roberts*, 881 F.2d 95, 101 (4th Cir.1989).

We have ruled that the totality of the circumstances shown by the government may suffice to infer the agreement necessary for a conspiracy conviction.

*Anderson*, 611 F.2d at 504. *See also United States v. Crockett*, 813 F.2d 1310, 1316 (4th Cir.1987). In a case similar to the one at hand, we held that:

> [T]he gist or gravamen of the crime of conspiracy is an *agreement* to effectuate a criminal act. We also recognize that the existence of a conspiratorial agreement need not be proven by direct evidence, but may be inferred from the facts and circumstances of the case, i.e. circumstances indicating that two or more people acted in concert to achieve an illegal goal.

*Laughman*, 618 F.2d at 1074 (citations omitted).

Such inferential analysis is not boundless, however. The federal courts have held that, though elements of a conspiracy may be proven by circumstantial evidence, "each element of the offense must be proven beyond a reasonable doubt." *United States v. Wexler*, 838 F.2d 88, 90 (3rd Cir. 1988). The standard for reviewing a conviction for conspiracy is the same as that mentioned above for conviction for possession with intent: "the evidence and all reasonable inferences arising from it must be viewed in the light most favorable to the government, the prevailing party." *Laughman*, 618 F.2d at 1075.

One element that the government must prove beyond a reasonable doubt is that some specific conspiracy existed. As we have said:

> [C]ircumstantial evidence that proves nothing more than association between two persons, even if one has a fixed intent known to the other to commit an unlawful act, is not sufficient to permit the inference of the requisite agreement between the two to act in concert to commit the act. Because conspiracy requires agreement between at least two persons to take a concerted action, if the purposes of the alleged coconspirators are different, though both are aimed at unlawful goals, there is no conspiracy.

*Giunta*, 925 F.2d at 764.

The Third Circuit has held that "[o]ne of the requisite elements the government

must show in a conspiracy case is that the alleged conspirators shared a 'unity of purpose,' the intent to achieve a common goal, and an agreement to work together toward that goal." *Wexler*, 838 F.2d at 90–91.

In *Wexler*, appellant was convicted of conspiracy to possess hashish. Appellant, identified as the driver of a "look-out" car, retreated dramatically from an area where drugs were being transferred from one vehicle to another, after he made "eye contact" with a police officer. The car he was in at the time had been rented in his name. Appellant was also seen talking to another co-defendant subsequent to another drug transfer in the vicinity. The defendant was later arrested in the process of further counter-surveillance activities. A Citizen's Band radio was found in his car at the time of arrest, and the sales record indicated that it had been purchased at a store near appellant's house by a man who gave a phony name and address. The court ruled that though it could quite readily be inferred that appellant was up to no good, such an inference was not sufficient to justify conviction for a specific conspiracy:

> [T]here is ample circumstantial evidence in this case from which the jury could have concluded that [appellant] was involved in a conspiracy with co-defendants ... and that the conspiracy involved the movement of cargo in the truck.... What is missing is any evidence that [appellant] knew that a controlled substance was couched behind the doors of the Ryder truck. That knowledge is an essential element of the conspiracy charged. Without it the conviction must fail. As we recently stated, "there must be evidence tending to prove that defendant entered into an agreement and had the specific unlawful purpose charged in the indictment."

*Wexler*, 838 F.2d at 91. The court went on to state that "the evidence is just as consistent, for example, with a conspiracy to transport stolen goods, an entirely different crime." *Id.* at 92.

In *United States v. Cooper*, 567 F.2d 252 (3rd Cir.1977), appellant was convicted of conspiracy to possess controlled substances when he drove a van across the country in which drugs were kept in the back under padlock. An auxiliary partition had been constructed in the van to prevent anyone, including appellant, from seeing what was in the back. The court ruled that:

> [t]here is no evidence that he knew what was padlocked in the rear compartment and no evidence that illegal plans were discussed during the telephone calls to his home ... in the absence of *some* evidence that he knew of the contents of the locked compartment or *some* evidence that he engaged in telephone or other communication of a conspiratorial nature, no factfinder could find beyond a reasonable doubt that [appellant] was a member of [the] conspiracy.

*Id.* at 254–55. *See also United States v. Glasgow*, 658 F.2d 1036 (5th Cir.1981) (similar facts with a similar result).

In *United States v. Waddy*, 536 F.2d 632 (5th Cir.1976), the court ruled that a man who "was in and out of the rooms of some of those participating in marijuana activities," and had carried suitcases for these men, and otherwise closely associated with them was not guilty of conspiracy. *Id.* at 634. The court concluded its evaluation by noting that "Twenty-four hundred years before this era Euripides observed that 'every man is like the company he keeps.' [Appellant] kept bad company but of that he was not charged or convicted." *Id.*

The application of *Wexler, Cooper,* and *Waddy* here indicates that the district court erred in not granting the Rule 29 motion for acquittal of the conspiracy charge. All three of those cases indicate a significant reluctance to apply a conspiracy conviction to individuals whose most heinous apparent crime is choosing the wrong friends. More than mere association with bad people who are committing crimes is required for a conspiracy conviction. And as *Wexler* suggests, more than being a bad person with the intent to commit a crime is required. A conspiracy is not shown until the government has presented evidence of a *specific* agreement to commit a *specific*

crime, for the same criminal purpose, on the part of all indicted conspirators.

The evidence of the connections between Bell and Cruz, Bell and Peguero, Cruz and the house at 1939 Pleasant Street, both men and the cars with the secret compartments, and both men with exorbitant sums of money, are assuredly indicative of intended wrong doing on the part of Bell and Cruz. But exactly what specific agreement to commit wrongful acts is indicated? The evidence is far too general to support a conviction for any concerted action incident to a specific conspiracy.

[7] The evidence against Cruz, when viewed in a light most favorable to the government, indicates that he believed that something illegal was being hauled in at least two cars that he was either driving or riding in. It can even reasonably be inferred that he knew there were drugs in the 1979 Oldsmobile. But beyond knowing possession of those drugs, which can be inferred, there is no evidence of any specific agreement to do anything with any of the other three alleged coconspirators.

[8] Cruz was observed leaving the residence at 1926 Pleasant Street, but neither the fact of his presence there, nor of his odd and incriminating activity following his encounter with the police officer, suggest any specific agreement between him and the residents of that house, or defendant Peguero. It is not enough to show that Cruz was intent on an unlawful purpose, or even that he was aware of the unlawful specific purpose of his alleged colleagues. The agreement between co-conspirators must be to promote the same unlawful goals, otherwise there is no conspiracy. *Giunta*, 925 F.2d at 764. There is no evidence that Cruz played any part in any specific unlawful goal or activity relating to the 30.71 grams of crack found in the 535–D Martin Luther King Drive apartment. His obvious association with men acting in violation of the law, and his obvious attempts to violate the law, are not sufficient to make a showing that all the men together were acting to violate the same laws at the same times, pursuant to a specific agreement. Without any evidence

to support such a conclusion, the conviction for conspiracy cannot stand.

[9] There is more evidence tying Bell to the residence at 535–D Martin Luther King Drive, and with defendant Peguero, but there is still no indication of a shared intent to commit any specific act. The photographs and the personal effects found at the residence, and the indication that Bell was a frequent driver of the 1979 Oldsmobile, and perhaps other cars, is enough to indicate that he was involved in nefarious activity, but not enough to show constructive possession of the 30.71 grams of crack found at 535–D Martin Luther King Drive and not enough to indicate any specific plans for the drugs between himself, Peguero, Cruz, or anyone else.

The district court consequently erred when it rejected Bell's and Cruz' motions for acquittal on the conspiracy charge connecting them with nefarious drug activity in the region between February and April of 1990. They do, however, remain convicted for possession with intent to distribute the 13.55 grams of crack cocaine found in the 1979 Oldsmobile on April 27.

We reverse and remand for resentencing determined solely on the basis of the 13.55 gram possession conviction. Because Bell and Cruz were not effectively convicted of conspiracy, the other issues in the case, relating to inclusion of various amounts of drugs connected with the conspiracy to determine an offense level, and of the effect of confidential testimony about the conspiracy at the sentencing hearing, need not be reached.

The judgments are accordingly

AFFIRMED IN PART AND REVERSED IN PART.