993 F.2d 1540
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Larry Edward FEURY, Defendant-Appellant.
 No. 92-5515.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 29, 1993
Decided: June 1, 1993
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Elizabeth V. Hallanan, District Judge. (CR-91-298)
 Argued: Leonard A. Kaplan, Assistant Federal Public Defender, Charleston, West Virginia, for Appellant.
 John Castle Parr, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 On Brief: Hunt L. Charach, Federal Public Defender, Charleston, West Virginia, for Appellant.
 Michael W. Carey, United States Attorney, Michael L. Keller, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 S.D.W.Va.
 AFFIRMED IN PART AND REVERSED IN PART.
 Before HALL, MURNAGHAN, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Appellant Feury was charged in the Southern District of West Virginia and convicted in a jury trial for violations of 21 U.S.C. § 846 (conspiracy to distribute and to possess with intent to distribute marijuana), and § 841(a)(1) (manufacture of marijuana and possession with intent to distribute marijuana). Before trial, he sought to suppress evidence of the marijuana and related paraphernalia on the grounds that the seizure of evidence violated his Fourth Amendment rights. He claimed that the aerial surveillance, which led to the seizure, was an illegal search, and that the search warrant's affidavit was facially insufficient. The motion to suppress was denied. During trial, he objected to a "willful blindness" instruction given to the jury, which found him guilty on all counts. The sentence was enhanced under U.S.S.G. § 2D1.1(b)(1), which requires enhancement when a firearm is possessed or used in relation to a drug trafficking crime. The court imposed a sentence at the bottom of the range (78 months), and imposed a fine of $3000.
 
 
 2
 As for the denied motion to suppress, it related to marijuana seized as a result of aerial surveillance of the house in which the defendant lived and the surrounding area by West Virginia police using a helicopter. We, from a search of the record, are satisfied that the motion to suppress properly was denied in view of the holdings in Florida v. Riley, 488 U.S. 445, 451-52 (1989) ("Any member of the public could legally have been flying over Riley's property in a helicopter at the altitude of 400 feet and could have observed Riley's greenhouse. The police officer did no more.... But it is of obvious importance that the helicopter in this case was not violating the law, and there is nothing in the record or before us to suggest that helicopters flying at 400 feet are sufficiently rare in this country to lend substance to respondent's claim that he reasonably anticipated that his greenhouse would not be subject to observation from that altitude.") (emphasis in original), and California v. Ciraolo, 476 U.S. 207, 214-15 (1986) ("[W]e readily conclude that respondent's expectation that his garden was protected from such observation is unreasonable and is not an expectation that society is prepared to honor.... The Fourth Amendment simply does not require the police traveling in the public airways at this altitude to obtain a warrant in order to observe what is visible to the naked eye.").
 
 
 3
 Also, the police reliance in good faith on the warrant justifying the seizure prepared by the magistrate from whom it was sought was justified. United States v. Leon, 468 U.S. 897, 913 (1984) ("[O]ur evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate leads to the conclusion that such evidence should be admissible in the prosecution's case in chief.").
 
 
 4
 The Appellant has argued that the evidence did not support the conspiracy charge, the manufacture of marijuana charge, and the intent to distribute charge. Concededly, there was ample evidence to support the finding that a person associated with the house cultivated marijuana and possessed it with intent to distribute. However, he has contended that there was insufficient evidence for the jury to conclude that he himself was the cultivator and possessor. His arguments on the possession, cultivation, and intent to distribute charges are based exclusively on his contention that there was insufficient proof that he resided at 159 Clay Street. He then has gone further to contend that there was no evidence that more than one person was involved in the cultivation and intent to distribute, and thus the conspiracy charge must fall. An agreement, which is necessary to prove a conspiracy, requires at least two persons.
 
 
 5
 The Appellant's contentions as to the lack of evidence to support the charges of possession, cultivation, and intent to distribute by him are without merit. The fact that the house contained records that pertained to the Appellant, that several people came onto the property looking for either the Appellant himself or "one of the Feury brothers," and that one of the Feury brothers stated that 159 Clay Street was the residence of his brother, all permit an inference that the Appellant lived at 159 Clay Street. That 159 Clay Street was the Appellant's residence was, in fact, never disputed at trial. The prosecutor and several witnesses referred repeatedly to the house as "defendant's" or "Feury's residence." The defense never objected that the prosecution or witnesses were assuming a fact not proven, and defense counsel himself even referred, at least once, to the house at 159 Clay Street as "Feury's residence."
 
 
 6
 There was also evidence to support the inference that, as resident of the house, it was the Appellant who cultivated the marijuana in the fields behind the house. The fields of marijuana were directly behind the house and were surrounded by hillsides with no neighbors. There were paths leading from the house to the fields; the only water source for the fields was from the house at 159 Clay; a brown paper bucket that was found in the field matched another one found inside the house. From the residence, police officers seized five pounds of marijuana, scattered about the house at various stages of being collected, dried, cut, and packaged, and there was one field next to the house that appeared to have been recently cleared. Thus it was fair for the jury to infer that the fields themselves were cultivated by the Appellant as resident of the house and that the marijuana found inside the house had come from the cleared field.
 
 
 7
 The sheer volume of the marijuana found in the fields, along with the paraphernalia found in the house-scales and baggies-sufficed to establish an intent to distribute. It was fair for the jury to conclude that the Appellant, as resident of the house and cultivator of the marijuana, was also the person with an intent to distribute.
 
 
 8
 As to the conspiracy charge, however, the Appellant has contended that there was insufficient evidence to prove that anyone else lived in the house with him, and no direct evidence to support a conclusion that more than one person was involved in the cultivation and intended distribution of the drug. The government did not introduce any direct evidence to show that there was a joint effort between the Appellant and anyone else to distribute. Although the Appellant has conceded that anyone residing in the house must have had knowledge of the marijuana operation, mere knowledge of a crime does not by itself make out a conspiracy.
 
 
 9
 The evidence on the basis of which conspiracy was alleged was the testimony tending to indicate that the Appellant's wife and daughter lived in the house with him. Officers who searched the house said they found men's and women's clothing in the house, and records pertaining to the Appellant, his wife and his daughter. The pervasive presence of the marijuana in every room in the house established, the government claimed, that anyone living inside the house had to have had knowledge that marijuana was being processed, stored, and packaged for distribution.
 
 
 10
 The elements of the crime of conspiracy are: "(1) an agreement between two or more persons ..., (2) to commit in concert an unlawful act." See United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991). Circumstantial evidence may be used as proof of a conspiracy. Id. Nevertheless, "circumstantial evidence that merely proves an association between two persons, even if one knows the other intends to commit a crime, cannot support an inference of the requisite agreement between the two to commit a crime." United States v. Peguero, 1992 U.S. App. LEXIS 403 (4th Cir. 1992), quoting United States v. Tyler, 505 F.2d 1329, 1332 (5th Cir. 1975). See also Giunta, 925 F.2d at 764 ("[C]ircumstantial evidence that proves nothing more than association between two persons, even if one has a fixed intent known to the other to commit an unlawful act is not sufficient to permit inference of requisite agreement between the two to act in concert to commit the act.").
 
 
 11
 In the instant case, the evidence by which the prosecution sought to prove that there was a conspiracy was minimal and purely circumstantial. The government introduced no evidence that either the wife or daughter had any criminal intent, had knowingly entered into any agreement, participated in or were acting in concert with the Appellant. Its theory of conspiracy was entirely based on the assumption or inference that residency in a house that showed such a thorough indication of a drug distribution operation as the one here did, must indicate that the residents were intentional, knowing, active participants in an agreement to distribute marijuana.
 
 
 12
 The government produced so little evidence and so sketchy a theory as to the existence of a conspiracy in which the Appellant took part that we do not conclude that a prima facie case was made out. Although the elements of conspiracy may be proven by circumstantial evidence, "[i]nferential analysis is not boundless ... [and] each element of the offense must be proven beyond a reasonable doubt.... One element that the government must prove beyond a reasonable doubt is that some specific conspiracy existed." United States v. Bell, 954 F.2d 232, 236 (4th Cir. 1992) (citations and quotations omitted). "More than mere association with bad people who are committing crimes is required for a conspiracy conviction.... A conspiracy is not shown until the government has presented evidence of a specific agreement to commit a specific crime, for the same criminal purpose, on the part of all indicted conspirators." Id . at 237 (finding that the evidence, which proved defendant believed that something illegal was being hauled in two cars that he was driving or riding in and permitted an inference that he knew there were drugs in the car, was not enough to prove any specific agreement to do anything with any of the other three alleged co-conspirators, but supported only knowing possession of drugs).
 
 
 13
 We, therefore, conclude that, while the manufacture and possession with intent to distribute convictions of the Appellant should be affirmed, the conspiracy conviction should be reversed.
 
 
 14
 The district court gave the jury a "willful blindness" instruction: "When a conspirator is aware of facts indicating a high probability of illegality but purposely fails to investigate on account of their (sic) desire to stay ignorant, they have knowledge of the illegal acts." The Appellant has objected because, he has claimed, such an instruction introduces risks that the jury will apply a "mere negligence" standard. The instruction is justified only when the defendant has claimed a lack of guilty knowledge and there is evidence that points in the direction of deliberate ignorance. Neither of those prerequisites were met in the instant case, the Appellant has argued.
 
 
 15
 It is clear, however, from the colloquy at the charge conference, that the willful blindness instruction was intended to focus not upon the defendant, but upon the other individuals living in the house. That is, the instruction was given because of the theory put forth by the government that anyone living in the house-including the wife and daughter of the Appellant-would have known of the intent to distribute marijuana. The government wanted to establish that if the others living in the house were aware of the illegal marijuana activity going on in the house but did not investigate in a desire to remain ignorant, that such awareness did not mean that they could not be knowing conspirators. That approach was rendered irrelevant by our reversal of the conspiracy conviction.
 
 
 16
 The willful blindness instruction was given after the court had instructed on all three charges. Thus, even though the instruction used the word "conspirator" rather than "defendant" it was not necessarily clear to the jury that the instruction pertained specifically to the conspiracy charge. The instruction is a correct statement of the law, and it is difficult to see why the instruction was or could have been prejudicial to the Appellant. In sum, the instruction was not prejudicial error.
 
 
 17
 It was undisputed that the Appellant possessed firearms and that they were found in the house where the marijuana was located. The Appellant claims, however, that the enhancement called for under U.S.S.G. § 2D1.1(b)(1) is inappropriate if it is clearly improbable that the drug trafficker's weapon was connected with the trafficking. See § 2D1.1(b)(1), comment. (n.3). A connection with the drug trafficking here, the Appellant has contended, was most improbable. Reliance has been placed on United States v. Apple, 915 F.2d 899 (4th Cir. 1990), in which we found that the Guidelines Commission did not intend that the "mere fact that a weapon was found in the home of the [trafficker] is necessarily sufficient for enhancement." Id. at 914. The Apple court remanded to the district court with a direction that adequate reasons for enhancement would have to be stated.
 
 
 18
 Under Apple, the district court must explicitly state the reasons for the enhancement under § 2D1.1(b)(1) only where"substantial questions are raised respecting whether a defendant possessed a firearm during the commission of a drug offense." Apple, 915 F.2d at 914. Under United States v. Rusher, 966 F.2d 868, 880 (4th Cir. 1992), the reviewing court must apply a clearly erroneous standard to the issue of whether defendants "possessed" firearms during the commission of their offense. A review of the record reveals that here the district court's imposition of the enhancement under the Guidelines was not clearly erroneous. There were no substantial questions about whether the Appellant possessed the firearm during the commission of the drug offense.
 
 
 19
 The Appellant's reliance on Apple for the proposition that mere presence of a firearm in a trafficker's home does not suffice for a "connection" to drug trafficking, is misplaced. In Apple, although the firearm was found in the defendant's home, the drugs were not. The defendant was arrested elsewhere, with the drugs, and without the firearms present. Thus there was a substantial question as to whether there was a connection between the drug crime and the firearms. In the instant case, however, the firearms and the drugs were found in the same location-not only within the same house, but within the same rooms. Ammunition was also available and nearby. Thus the district court's determination that the Appellant possessed a dangerous weapon during commission of the offense was not clearly erroneous. The fact that the Appellant testified at his sentencing hearing that he owned the weapons for hunting purposes does not make it clearly improbable that there was a connection between the guns and the drugs. See Rusher, 966 F.2d at 880 (court rejected a defendant's argument that he did not "possess" the firearms because they were actually owned by someone else, where one of the firearms was found in the same briefcase that contained drugs, and the others, fully loaded, were in the bed of the truck where drugs were found). The enhancement was appropriate.
 
 
 20
 The Appellant finally has argued that the imposition of the fine of $3,000 must be vacated because the court did not make any factual findings as to his ability to pay.
 
 
 21
 The guideline minimum for the offense which the Appellant was convicted for (and which we have affirmed) was $12,500. The court downwardly departed from the minimum after noting that a larger fine would be substantially burdensome. It imposed the $3,000 fine based on information in the presentence report. The report noted that the Appellant's net worth was about $2,592, and that before incarceration he earned about $700 a month. It stated that he possessed carpentry skills and was employable and would be able to earn income while incarcerated and after he was released. The district court accepted the factual findings of the presentence report, and thus the report served as the functional equivalent of the findings required. The Appellant's claim that the fine must be vacated is without merit.
 
 Accordingly, the judgment is
 
 22
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 23
 WILLIAMS, Circuit Judge, concurring in part and dissenting in part:
 
 
 24
 I agree that the evidence was sufficient to support Feury's convictions for manufacturing marijuana and for possession with the intent to distribute marijuana. Because I believe the evidence was also sufficient to support Feury's conviction for conspiracy, I dissent from the reversal on that count.
 
 
 25
 The Government built its case against Feury on the manufacturing and possession counts upon a simple syllogism. The amount of marijuana found at 159 Clay Street was so great, and the evidence of cultivation so extensive, that anyone residing there necessarily was involved in its manufacture and intended to distribute it. Feury lived at 159 Clay Street. Therefore, Feury both manufactured marijuana and possessed with the intent to distribute marijuana.
 
 
 26
 The majority opinion acknowledges the force of this logic. Majority op. at 4. My disagreement lies in the opinion's failure to acknowledge that the syllogism applies with equal force to Feury's wife. The jury could have concluded from the evidence that she lived at 159 Clay Street; hence, the jury could have concluded that she manufactured marijuana and possessed with the intent to distribute marijuana. The jury thus could have concluded that two persons lived at the Clay Street residence, manufactured and possessed marijuana, and intended to distribute it. I believe the jury was entitled to go one step further and conclude that Feury and his wife agreed, and therefore conspired, to manufacture and distribute marijuana.
 
 
 27
 The majority reverses because, in its view, the evidence supports finding an association between Feury and his wife, but not finding a conspiratorial agreement. As it notes, " '[m]ore than mere association with bad people who are committing crimes is required for a conspiracy conviction.' " Majority op. at 6 (quoting United States v. Bell, 954 F.2d 232, 236 (4th Cir. 1992)). Evidence showing that two individuals engaged in the same criminal activity goes well beyond "mere association with bad people" and strongly supports the jury's finding of conspiracy. See United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir. 1980) (existence of a conspiracy may be inferred from "circumstances indicating that two or more persons acted in concert to achieve an illegal goal"), cert. denied, 447 U.S. 925 (1980). For that reason, I would affirm the conspiracy conviction.