52 F.3d 322
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph Nathaniel BROWN, Jr., a/k/a Joe Jr., Defendant-Appellant.
 No. 94-5483.
 United States Court of Appeals, Fourth Circuit.
 Submitted April 4, 1995.
Decided April 20, 1995.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CR-93-151)
 C. David Whaley, Anthony Spencer, Morchower, Luxton and Whaley, Richmond, Virginia, for appellant.
 Helen F. Fahey, United States Attorney, Joan E. Evans, Assistant United States Attorney, Richmond, Virginia, for appellee.
 E.D.Va.
 AFFIRMED.
 Before MICHAEL and MOTZ, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant, Joseph Nathaniel Brown, Jr., appeals from a 162-month sentence after a jury trial conviction on one count of conspiring to distribute heroin and crack cocaine, 21 U.S.C. Sec. 846 (1988), two counts of distributing heroin and crack cocaine, 21 U.S.C.A. Sec. 841 (West 1981 & Supp.1994), and one count of distributing heroin within 1000 feet of a school zone. 21 U.S.C.A. Sec. 860 (West Supp.1994). Finding no error, we affirm.
 
 
 2
 * While Torrence Jenkins was an inmate at the Richmond City Jail in 1993, he contacted the FBI and volunteered to become a paid informant. Jenkins hoped to receive a reduction on his state sentence for grand larceny, and he hoped to improve his financial situation. On October 17, 1993, on his own initiative, Jenkins approached Brown to see if Brown could help him make some money. Brown fronted Jenkins fifteen $30.00 packets of heroin and introduced Jenkins to Curtis Valentine. Brown told Jenkins that Valentine was Brown's "right hand man" and that Jenkins would be dealing with Valentine. Jenkins contacted the FBI the next day and turned over fourteen of the fifteen packets. Jenkins told the FBI that he had traded one of the packets for a ride to his hotel. On October 19, 1993, Jenkins was fitted with a tape recorder and given $450.00 to pay for the fifteen packets of heroin. Jenkins was frisked, and he went to Brown's residence with undercover Officer Langhorn. Jenkins paid Brown, and Brown left in a car. Shortly thereafter, Brown returned with Valentine, who fronted Jenkins thirty more packets of heroin.
 
 
 3
 The following day, Jenkins was again pat frisked by the FBI and told to buy crack cocaine from Brown. Jenkins and Officer Langhorn went to Brown's house, and Jenkins paid Brown for the previously fronted heroin. Jenkins asked Brown for a quarter ounce of crack cocaine, which Brown told his niece to retrieve. Brown's niece left the house and later returned with crack cocaine. Jenkins paid Brown for the quarter ounce of crack cocaine, and Brown fronted Jenkins another quarter ounce. At Brown's instruction, Jenkins and Officer Langhorn then drove to John Marshall High School. Brown and Valentine arrived in a car, and Brown handed Jenkins thirty more packets of heroin. Brown and Valentine were later arrested.
 
 II
 
 4
 Brown raises three claims of insufficiency of the evidence on appeal. This Court will not reverse a conviction for insufficiency of the evidence unless after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Johnson, 659 F.2d 415, 419 (4th Cir.1981). Additionally, it is within the sole province of the jury to sort through apparent inconsistencies in the evidence and assess the credibility of the witness testimony. This Court will not engage in a reweighing of those credibility assessments. United States v. Russell, 971 F.2d 1098, 1109 (4th Cir.1992), cert. denied, 61 U.S.L.W. 3479 (U.S.1993).
 
 
 5
 Brown first argues that the evidence was insufficient to sustain a conviction for distributing heroin within 1000 feet of a public middle school. See 21 U.S.C.A. Sec. 860. This claim is meritless. Brown forfeited appellate review of this claim (but for plain error) by his failure to object at trial or sentencing. See United States v. Olano, 61 U.S.L.W. 4421 (U.S.1993). The Government introduced uncontroverted evidence from a city mapper. Using a certified plat of the property, the mapper testified that the last heroin transaction occurred 10 feet from a high school property line and 225 feet from the building itself. This testimony is sufficient to meet the Government's burden of proof. See United States v. Campbell, 935 F.2d 39, 45 (4th Cir.), cert. denied, 502 U.S. 929 (1991). Hence, Brown has not established plain error.
 
 
 6
 Brown next argues that the evidence was insufficient to establish that he participated in a conspiracy. Brown argues that the evidence failed to show that he had an agreement with any other party to effectuate the distribution of heroin and crack cocaine. A conspiracy is defined as an agreement to effectuate a criminal act. United States v. Bell, 954 F.2d 232, 236 (4th Cir.1992). To support a conspiracy conviction the government is required to show that a conspiracy existed; that the defendant had knowledge of the conspiracy; and, that the defendant voluntarily became a part of that conspiracy. Id. (citing United States v. Badolato, 701 F.2d 915, 920 (11th Cir.1983)). The existence of the conspiratorial agreement may be inferred from " 'circumstances indicating that two or more people acted in concert to achieve an illegal goal.' " Bell, 954 F.2d at 236 (quoting United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir.1980)).
 
 
 7
 The evidence of Brown's active participation in a conspiracy was more than sufficient to sustain a conviction. Jenkins and Officer Langhorn testified that Brown directed both his niece and Valentine to assist in performing various acts in furtherance of the criminal goal. For instance, when Brown first fronted heroin to Jenkins, he introduced Jenkins to Valentine and stated that in the future Jenkins would be dealing with Valentine, Brown's right hand man. The next day, Jenkins paid Brown for the fronted heroin. Brown left and later returned with Valentine, who then supplied Jenkins with more heroin. Finally, when Jenkins requested crack cocaine, Brown instructed his niece to retrieve it. Brown's niece later returned with the crack cocaine, which Brown told his niece to weigh. Accordingly, the evidence sufficiently established Brown's voluntary participation in a conspiracy.
 
 
 8
 Finally, Brown argues that the evidence was insufficient because Jenkins, the FBI informant, was so inherently unreliable that no rational trier of fact could have convicted based on his testimony. The evidence showed that Jenkins was paid approximately $6,000 by the FBI for setting up Brown, that he occasionally used drugs and alcohol, that he had at least two prior felony convictions, that he received mental health counseling prior to testifying, and that while working for the FBI on an unrelated sting operation, he stole some money from a hotel at which he stayed. We decline to consider this claim because the weight the jury accorded Jenkins's testimony is not reviewable by this Court.* Russell, 971 F.2d at 1109. In any event, _________________________________________________________________ *We note further that counsel had ample opportunity below to cross-examine Jenkins in an effort to persuade the jury of his lack of credibility.
 
 
 9
 we note that Jenkins's testimony was corroborated by Officer Langhorn, who accompanied Jenkins on each drug transaction charged in the indictment, and by other FBI agents who maintained close surveillance over the crime scenes.
 
 
 10
 We accordingly reject Brown's arguments and affirm his convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid the decisional process.
 
 AFFIRMED