**Carlton Oscar WEAVER, and Ronald Eugene All, Appellants,**

v.

**G. R. WILLIAMS, Superintendent, North Carolina Department of Correction, Yanceyville, North Carolina, Appellee.**

**No. 74–1608.**

United States Court of Appeals,
Fourth Circuit.

Submitted Nov. 7, 1974.

Decided Jan. 20, 1975.

Gerald Alch, Boston, Mass., and Thomas W. H. Alexander, Raleigh, North Carolina, on brief for appellant.

James H. Carson, Jr., Atty. Gen. of North Carolina, and Richard N. League, Asst. Atty. Gen., North Carolina, on brief for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and CRAVEN, Circuit Judge.

CRAVEN, Circuit Judge:

■ This is a motor-vehicle-search-without-a-warrant case. The fourth amendment does not forbid searches without warrants. It only forbids unreasonable searches. Because we conclude that this search by a state highway patrolman was wholly reasonable under the circumstances, we affirm the district court's denial of habeas relief to the petitioning state prisoners.

At 7:20 a. m. on March 20, 1971, Virginia state highway patrolman S. R. Vaughn observed a truck being driven on a Virginia highway in a dangerous condition. All of the windshield with the exception of a 10-inch to 12-inch space on the driver's side was covered with cardboard. After stopping the vehicle, which was occupied by the two petitioners, Vaughn compared its registration with the license plate and in the course of doing so noticed the odor of ham. He stepped up on the wheel axle, enabling him to look over the siding of the truck, and observed that the truck was loaded with hams. Inquiries about the cargo resulted in conflicting stories from the occupants as to the source, and ultimately, in Weaver's flight. Petitioner All and the truck were taken to the Franklin County, Virginia, jail. Later, when the officers learned that the hams had been stolen, the truck was searched and bolt cutters that had been used to effect the theft were discovered on the floor of the cab. At trial the bolt cutters were received in evidence, and the highway patrolman was allowed to testify that he had smelled the hams and seen them in the truck.

■ On appeal it is not suggested, of course, that appellants are innocent, but only that their fourth amendment rights were violated, and that because the trooper bungled the prisoners must be set free. We think not. Patrolman Vaughn acted pursuant to his duty under the Code of Virginia:

§ 46.1–8. Stopping vehicles for inspection or to secure information.— Any peace officer who shall be in uniform or who shall exhibit his badge or other sign of authority shall have the right to stop any motor vehicle, trailer or semitrailer, upon request or signal, for the purpose of inspecting the motor vehicle, trailer or semitrailer as to its equipment and operation, its manufacturer's serial or engine number or its contents or load, if such motor ve-

**886**

hicle, trailer or semitrailer is a property carrying vehicle or for the purpose of securing such other information as may be necessary.

We hold that such a statute and the implementation of it by a state highway patrolman with respect to a property carrying vehicle is a reasonable exercise of state police power over the operation of motor vehicles on its highways.

> The constitutional difference between searches of and seizures from houses and similar structures and from vehicles stems both from the ambulatory character of the latter and from the fact that extensive, and often noncriminal contact with automobiles will bring local officials in "plain view" of evidence, fruits, or instrumentalities of a crime, or contraband.

Cady v. Dombrowski, 413 U.S. 433, 442, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973).

 Alternatively, we hold that a state traffic officer may lawfully testify to anything he discerns in or about a motor vehicle on the highway, and that his inspection is not limited by his stature but that he may lawfully position himself by any means available to improve his view. Whether or not inadvertence is an essential element of the orthodox plain view doctrine, *see* United States v. Bradshaw, 490 F.2d 1097, 1100 (4th Cir. 1974), we hold it is not with respect to a traffic officer on an open highway. "Plain view" in this context means whatever can be seen, whether accidentally or by intentional scrutiny. *Cf. Cady, supra,* 413 U.S. at 441, 93 S.Ct. 2523.

As for the introduction of the bolt cutters which were discovered after the officers knew of the burglary, we hold that the subsequent search of a motor vehicle lawfully impounded and taken into custody is not a violation of the fourth amendment. Chambers v. Maroney, 399 U.S. 42, 51–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *see Cady, supra,* 413 U.S. at 445–448, 93 S.Ct. 2523, interpreting Harris v. United States, 390 U.S.

234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), and Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

Affirmed.