1 F.3d 1235
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth Darryl WATSON, Defendant-Appellant.
 No. 92-5790.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: July 2, 1993.
Decided: August 6, 1993.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Durham.
 Thomas H. Johnson, Jr., for Appellant.
 Benjamin H. White, Jr., United States Attorney, Harry L. Hobgood, Assistant United States Attorney, for Appellee.
 M.D.N.C.
 AFFIRMED
 Before HALL, HAMILTON, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Kenneth Darryl Watson appeals his convictions of possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) (1988), and use of a firearm during a drug trafficking crime, in violation of 18 U.S.C.A. Sec. 924(c)(1) (West Supp. 1992). Watson contends on appeal that the district court improperly denied his motion to suppress evidence seized from the car he was driving on the night of January 12, 1992. He also claims that the district court improperly denied his Fed. R. Crim. P. 29 motion for judgment of acquittal. Finding both contentions to be without merit, we affirm the convictions.
 
 I.
 
 2
 This Court reviews de novo the legal conclusions involved in a suppression determination. Factual determinations informing those legal conclusions are reviewed under the clearly erroneous standard. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (U.S. 1992).
 
 
 3
 David Martin, a deputy with the Orange County, North Carolina, Sheriff's Department, testified at the suppression hearing. Martin stated that approximately one week before the traffic stop, an individual whom he knew had informed him of suspected drug activity at a particular trailer on West Hill Avenue in Hillsborough. Martin, who worked the midnight (11:00 p.m.-7:00 a.m.) shift, drove past the trailer at least twice a night during that week. He noticed what he considered to be suspicious activity: different cars parked at the trailer at various times in the early morning (before 5:00 a.m.).
 
 
 4
 On January 12, a formal complaint about suspected drug activity at the trailer was made by another citizen. Around midnight on January 12, Martin entered the trailer park in a marked unit. He observed a car at the trailer with its lights on. As Martin entered the trailer park, the car drove off. Martin followed the car a short distance. He stopped behind the car when it stopped at a stop sign. The car made a u-turn and drove approximately one-tenth of a mile. The driver's right shoulder dipped down, as if the driver were trying to conceal something under the seat. Martin then turned on his unit's blue lights and stopped the car. There was no traffic violation.
 
 
 5
 Martin asked for the driver's license and the car's registration. The driver, Watson, only had his license. Martin returned to his vehicle and waited for a back-up unit, which arrived within a few minutes. Martin then approached the vehicle, asked Watson to exit the car, and looked through the windshield. He saw what appeared to be part of a gun under the car's front seat. A female was seated in the passenger seat. Martin, for his safety, entered the vehicle and retrieved what proved to be a loaded nine mm. handgun. Martin at that point intended to arrest Watson for carrying a concealed weapon.
 
 
 6
 Deputy Walker, Martin's back-up, then conducted a pat-down search of Watson and discovered a stun gun in his pocket. Martin walked to the car's passenger side and instructed the passenger to exit the vehicle. Martin discovered a loaded twenty-five mm. handgun on the floorboard on the passenger side of the car. He began to push a white sock out of the way so that he would have a better view of the area under the seat. The sock was heavy, and Martin looked inside. He found a large plastic bag containing a white substance that Martin suspected to be cocaine. In fact, the sock contained 108 grams (net) of cocaine.
 
 
 7
 After locating that gun, Martin asked Watson if there were any more guns in the car. Watson, who did not know of the discovery of the second handgun, told Martin that there were and that he would show Martin where the other gun was. Martin told him that he already had located the twenty-five mm. gun. Both Watson and his passenger were arrested.
 
 
 8
 The district court determined after hearing this testimony that there was no constitutional violation in connection with the stop, search, seizure, and arrest. We agree. Because a routine traffic stop is in the nature of an investigative detention, rather than a custodial arrest, courts use the analysis of Terry v. Ohio, 392 U.S. 1 (1968), to determine whether such a stop violates the Fourth Amendment. United States v. Rusher, 966 F.2d at 875.
 
 
 9
 Under Terry, a police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, based on articulable facts, that criminal activity is afoot. Terry v. Ohio, 392 F.2d at 30; see United States v. Crittendon, 883 F.2d 326, 328 (4th Cir. 1989). Factors to be considered when determining whether a stop violated the Fourth Amendment include: an area's propensity toward crime; the lateness of the hour the questionable activity is observed; any suspicious behavior of the suspect; and the practical experience of officers involved in the stop. United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993).
 
 
 10
 In this case, Martin was presented with sufficient, articulable facts to give rise to a reasonable suspicion that criminal activity might be afoot. A week prior to the arrest, he was told of suspected drug dealing at the trailer. He subsequently observed activity consistent with drug dealing (many different vehicles parked at the trailer late at night and in the early morning). On January 12, a different citizen lodged a formal complaint about drug transactions at the trailer. Further, the driver of the car, who must have known he was being followed by a police car, leaned over as if he were hiding something under the car seat. These facts, considered together, justified the initial stop. See United States v. Crittendon, 883 F.2d at 328.
 
 
 11
 Under the plain view doctrine, Martin's seizure of the handgun which he saw through the car's windshield did not violate the Fourth Amendment. See Horton v. California, 496 U.S. 128, 136-37 (1990). Weaver v. Williams, 509 F.2d 884, 886 (4th Cir. 1975). As carrying a concealed weapon is a criminal offense in North Carolina, see N.C. Gen. Stat. Sec. 14-269 (1986), Martin had probable cause to arrest Watson and to conduct a further search of the vehicle. See Chimel v. California, 395 U.S. 752, 762-63 (1969); United States v. Litman, 739 F.2d 137, 139 (4th Cir. 1984). It is irrelevant that the actual arrest occurred immediately after, instead of prior to, the search. See Rawlings v. Kentucky, 448 U.S. 98, 111 (1980).
 
 
 12
 We accordingly find that the denial of Watson's suppression motion was proper.
 
 II.
 
 13
 Watson also claims that the district court erred when it denied his Rule 29 motion. "The test for deciding a [Rule 29 motion] ... is whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir. 1982); see also United States v. Parodi, 703 F.2d 768, 790 (4th Cir. 1983).
 
 
 14
 At trial, Martin and his back-up officer testified about the traffic stop and subsequent arrest. There was also testimony about a laboratory analysis conducted on the cocaine that was seized. Jaime Colley, an ATF agent, testified that he conducted the federal investigation of the incident. Colley arrested Watson on the federal charges on April 29, 1992. After giving Watson his Miranda rights, see Miranda v. Arizona, 384 U.S. 436 (1966), Colley transported Watson from the Orange County Jail to Greensboro. On the way to Greensboro, Colley asked Watson if he wanted to talk about the charges. Watson said that he did.
 
 
 15
 Watson initially told Colley that he did not know where he got the car he was driving on January 12. However, Watson then admitted that he had gotten the car from "Shawn," a Jamaican in Chapel Hill. Shawn was a drug dealer for whom Watson had sold drugs prior to January 12. Additionally, Watson had purchased drugs from Shawn. Watson claimed that he had no knowledge the cocaine and guns were in the car.
 
 
 16
 Viewed in the light most favorable to the United States, the evidence was sufficient to convict on both the drug and firearm charges. With respect to the Sec. 924(c) violation, a defendant need not actually brandish or use the weapon in order to be convicted. Use is established if a weapon is strategically placed and available to protect contraband, United States v. Townley, 929 F.2d 365, 368 (8th Cir. 1991), or to facilitate the likelihood of the crime's success. United States v. Paz, 927 F.2d 176, 179 (4th Cir. 1991). In this case, Watson was driving a car on whose front floor-board police found guns and cocaine. The evidence was sufficient to convict Watson for violating Sec. 924(c).
 
 
 17
 To convict for a violation of Sec. 841(a)(1), the Government must establish beyond a reasonable doubt that the defendant (1) knowingly (2) possessed a controlled substance (3) with the intent to distribute it. United States v. Samad, 754 F.2d 1091, 1096 (4th Cir. 1984). Constructive possession suffices. United States v. Bell, 954 F.2d 232, 235 (4th Cir. 1992). As Watson had dominion and control over the vehicle in which the cocaine was found, a reasonable jury could have found possession. See United States v. Blue, 957 F.2d 106, 107-08 (4th Cir. 1992). Further, a reasonable juror could have found that the possession was knowing, given Watson's admission to Colley and the presence of the cocaine. See United States v. Zandi, 769 F.2d 229, 235 (4th Cir. 1985). Finally, the jury could have inferred from the significant amount of cocaine seized that the cocaine was not for Watson's personal use, but instead was intended for distribution. See United States v. Bell, 954 F.2d at 235.
 
 
 18
 In sum, we conclude that the evidence, when viewed in the light most favorable to the Government, was sufficient to convict Watson of both offenses. Accordingly, the denial of his Rule 29 motion was proper.
 
 III.
 
 19
 We accordingly affirm the convictions. As our review of the record and other materials before the Court reveals that it would not significantly aid the decisional process, we dispense with oral argument. The motion to file a pro se supplemental brief is granted. The motion for oral argument is denied.
 
 AFFIRMED