51 F.3d 269
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee.
v.
Ralph Warren NICHOLS, Jr., Defendant-Appellant.
 No. 94-5560.
 United States Court of Appeals,
Fourth Circuit.
 Submitted March 21, 1995.
Decided April 10, 1995.
 
 Michael H. McGee, Charlotte, NC, for Appellant. Mark T. Calloway, United States Attorney, H. Thomas Church, Assistant United States Attorney, Charlotte, NC, for Appellee.
 Before WIDENER and MOTZ, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Ralph Warren Nichols, Jr., was convicted by a jury of conspiracy to possess marijuana with intent to distribute, 21 U.S.C.A. Sec. 846 (West Supp.1994). In this appeal, Nichols challenges his conviction on the grounds that the evidence was insufficient to support his conviction and that the district court abused its discretion in admitting evidence of prior drug sales. Nichols also contests his 78-month sentence, alleging that the district court clearly erred in determining the amount of marijuana attributable to him under sentencing guideline section 2D1.1,* in enhancing his sentence for possession of a firearm, and in making inadequate findings on these two issues. We affirm.
 
 
 2
 The marijuana conspiracy was headed by Randy Gribble and lasted from October 1988 to January 1992. During this time, Gribble bought and transported large quantities of marijuana from Texas to North Carolina, where he sold it to numerous other people for further distribution. Gribble owned a car lot. He testified at trial that he met Nichols in mid-1990, and that Nichols worked for him towing and repossessing cars several days a week beginning in the summer of 1990. By that time, Gribble had already been arrested on a federal drug charge; he went to prison in January 1991. Before he left, Gribble turned the marijuana operation over to his wife and his partner, Derril Pasour, and it continued for another year.
 
 
 3
 Gribble said he sold a total of 100 to 150 pounds of marijuana to Nichols in eight to ten transactions which occurred between September and December 1990. The amounts ranged from one pound to 15 pounds. He sold the first pound to Nichols for $2200, a higher price than normal because it was the off-season for marijuana. Thereafter, he fronted marijuana to Nichols.
 
 
 4
 Stephanie Gribble testified that Nichols bought 100-200 pounds of marijuana from her husband. She did not see the transactions, but sometimes helped count the cash Nichols brought in payment. She recalled that the largest amount she saw was $17,000. Derril Pasour testified that he sold marijuana to Nichols only once, before Gribble went to prison. Jack Coppola, who sold marijuana and at one time stored marijuana at his house for Gribble, testified that he and Nichols waited at Gribble's house for two hours one night while Gribble retrieved marijuana from another storage place. Gribble testified that he sold 15 pounds of marijuana to Nichols and 15 pounds to Coppola on that occasion.
 
 
 5
 Over Nichols' objection, the government introduced evidence of Nichols' marijuana sales before he became involved with Gribble. His former girlfriend, Sherry Malac, testified that Nichols began selling marijuana in 1987, after they were living together. Malac said Nichols began by purchasing an ounce to four ounces a week, then progressed to buying a pound a week which he sold to his friends. Christopher Gilreath testified that he bought marijuana from Nichols between 1987 and 1990. He said he began buying a quarter ounce of marijuana each time and that the amount increased to an ounce. Robert Payne testified that he bought a bag of marijuana a week from Nichols for several years beginning in 1988.
 
 
 6
 Nichols admitted that he sold marijuana to twenty-five or thirty people for several years beginning in 1987, but testified that he bought the marijuana from other sources than Gribble, and only in small quantities which he used or distributed to friends. He admitted that he kept a pistol at his house during this time. Nichols testified that he was sometimes given small amounts of marijuana by Gribble in payment for his work at the car lot but denied ever buying marijuana from him.
 
 
 7
 Nichols first contends that the evidence showed, at most, that he bought marijuana from Gribble, but not that he was involved in Gribble's conspiracy. Under Glasser v. United States, 315 U.S. 60, 80 (1942), a verdict must be sustained if, taking the view most favorable to the government, it is supported by substantial evidence. The test is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The elements of a conspiracy to violate Sec. 846 are (1) an agreement between two or more persons to violate the laws of the United States relating to controlled substances, and (2) the defendant's willful joinder in that agreement or undertaking. United States v. Clark, 928 F.2d 639, 641-42 (4th Cir.1991).
 
 
 8
 Nichols argues that, at most, the evidence showed that he had a buyer-seller relationship with Gribble. In United States v. Townsend, 924 F.2d 1385, 1394 (7th Cir.1991), the Seventh Circuit held that such a relationship, standing alone, is insufficient to support a conspiracy conviction. This Court has agreed that "there may be instances where one is merely a buyer or seller, but not a conspirator." United States v. Mills, 995 F.2d 480, 485 (4th Cir.), cert. denied, 62 U.S.L.W. 3252 (U.S.1993). However, in Mills, this Court expressed the following reservations about the holding in Townsend:
 
 
 9
 In our view, evidence of a buy-sell transaction is at least relevant (i.e., probative) on the issue of whether a conspiratorial relationship exists. Moreover, we believe evidence of a buy-sell transaction, when coupled with a substantial quantity of drugs, would support a reasonable inference that the parties were coconspirators.
 
 
 10
 995 F.2d at 485 n. 6.
 
 
 11
 After Mills was decided, the Seventh Circuit held, in United States v. Dortch, 5 F.3d 1056, 1065-66 (7th Cir.1993), cert. denied, 62 U.S.L.W. 3551 (U.S.1994), and cert. denied, 63 U.S.L.W. 3562 (U.S.1995), that a series of transactions which demonstrate a defendant's ongoing relationship with members of a conspiracy may be evidence that he is also a member of the conspiracy. In addition, evidence that a defendant was fronted drugs, rather than required to make immediate payment, was held to be important evidence of prolonged cooperation indicating an agreement to distribute drugs. Id.
 
 
 12
 In Nichols' case, he was clearly outside the inner circle of Gribble's conspiracy. There was no evidence that he was involved in the transportation of marijuana to North Carolina from Texas or its storage or preparation for sale, nor that Nichols was at the party Gribble gave on New Year's Eve in 1990, where Gribble announced to mem bers of his organization that his wife and Derril Pasour would continue the operation while he was in prison. However, Nichols made repeated purchases of sizeable amounts of marijuana from Gribble (and once from Pasour) over a period of four months. All but his first purchase were fronted to him. Therefore, the evidence was sufficient to support the jury's finding that he was involved in the conspiracy.
 
 
 13
 Next, Nichols maintains that the admission of testimony from Malac, Gilreath, and Payne concerning marijuana he sold before he met Gribble violated Federal Rule of Evidence 404(b) because those sales were unrelated to the Gribble conspiracy with which he was charged. Nichols argues that this evidence was unnecessary, and only probative of character, because he admitted selling marijuana which he obtained from sources other than Gribble.
 
 
 14
 Evidence of prior bad acts may not be admitted "to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). The test used to determine whether the district court has abused its discretion in admitting Rule 404(b) evidence is whether the evidence is (1) relevant to an issue other than character, (2) necessary, and (3) reliable. United States v. Hernandez, 975 F.2d 1035, 1039 (4th Cir.1992); United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988).
 
 
 15
 Sherry Malac's testimony that Nichols started selling small amounts of marijuana in 1987 and quickly moved up to a pound a week, and that he regarded it as a business, was relevant because it contradicted Nichols' testimony that he was never more than a social user of marijuana who facilitated his friends' use of marijuana with him. For the same reason, her testimony was necessary, and it was reliable. Although Nichols tried to portray her as mentally unstable, she testified that she had held a steady job throughout her relationship with Nichols (while he had not), and that she had been the one who paid the bills and bought the trailer they lived in while he was buying marijuana from Gribble. The testimony of Gilreath and Payne was not shown to be unreliable. Their testimony corroborated Malac's testimony, and their testimony was necessary because of Nichols' attempt to discredit Malac.
 
 
 16
 Nichols claims that the testimony of Malac, Gilreath, and Payne, even if admissible under Rule 404(b), should have been excluded as more prejudicial than probative, Fed.R.Evid. 403, because it unfairly linked him to the inception of Gribble's conspiracy in 1988. However, Gribble testified that he did not meet Nichols until June of 1990. We find that the evidence was properly admitted.
 
 
 17
 Nichols filed no objections to the presentence report, in which the probation officer recommended that he be held responsible for 150 to 200 pounds of marijuana. At the sentencing hearing, his attorney made a brief, last-minute objection to the amount, asking the court to rely on its recollection of the evidence to find a lesser amount attributable to Nichols. The court found that "there was at least 150-200 pounds of marijuana involved in this matter" and set the base offense level at 24 (80-100 kilograms). USSG Sec. 2D1.1.
 
 
 18
 We review the district court's factual determination of the amount of marijuana attributable to Nichols under the clearly erroneous standard. United States v. Banks, 10 F.3d 1044, 1057-58 (4th Cir.1993), cert. denied, 62 U.S.L.W. 3755 (U.S.1994); USSG Sec. 1B1.3(a)(1)(B), comment. (n.2). In addition to amounts he personally handled, a defendant in a drug conspiracy is responsible for amounts distributed by co-conspirators if their conduct came within the scope of his agreement, was reasonably foreseeable to him, and was in furtherance of the jointly undertaken criminal activity. Id. While Gribble testified that he sold a maximum of 150 pounds to Nichols, the trial evidence established that Nichols knew Gribble was distributing to others as well as to him. He and Jack Coppola waited for several hours together to buy a total of 30 pounds of marijuana from Gribble on one occasion. The district court's determination that the distribution of at least 177 pounds (80 kilograms) of marijuana was reasonably foreseeable to Nichols, within his agreement, and in furtherance of the jointly undertaken activity, was not clearly erroneous.
 
 
 19
 Nichols complains that the district court must have erroneously set his base offense level at 26 because the court's finding on the drug amount only equates to a base offense level of 24 and the court made no finding concerning a weapon enhancement. This agreement is frivolous. The court did not mention the 2-level weapon enhancement because Nichols did not challenge it. The court need only make findings on disputed issues. USSG Sec. 6A1.3.
 
 
 20
 The enhancement for possession of a firearm during the offense is thus reviewable only for plain error. United States v. Olano, 61 U.S.L.W. 4421 (U.S.1993). The enhancement is properly made if the gun is present during the offense unless it is clearly improbable that it was connected to the offense. USSG Sec. 2D1.1(b)(1), comment. (n.3); United States v. Apple, 962 F.2d 355, 338 (4th Cir.1992) (Apple II ). Nichols admitted keeping a .44 caliber pistol at his house where he kept his marijuana and made his sales between 1987 and 1991. Consequently, we find that the district court did not plainly err in making the enhancement.
 
 
 21
 We therefore affirm the conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 22
 AFFIRMED.
 
 
 
 *
 United States Sentencing Commission, Guidelines Manual (Nov.1993)