**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 94-5321

KENNETH W. KEMP, a/k/a Lamont,
a/k/a El, a/k/a Al, a/k/a L,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
J. Calvitt Clarke, Jr., Senior District Judge.
(CR-93-117)

Argued: December 8, 1995

Decided: January 3, 1996

Before ERVIN, Chief Judge, MOTZ, Circuit Judge, and
WILLIAMS, Senior United States District Judge for the Eastern
District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Cloud Hicklen Miller, III, MILLER & ASSOCIATES,
Atlanta, Georgia, for Appellant. Laura Marie Everhart, Assistant
United States Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:**
Helen F. Fahey, United States Attorney, Norfolk, Virginia, for Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Kenneth W. Kemp was convicted in a jury trial of 8 counts of conspiracy and drug distribution. Kemp appeals both his conviction and his sentencing on various grounds, raising questions regarding the Sixth Amendment, jury instructions, several guideline sentencing factors and the admissibility of witness statements taken in the course of an investigation. Finding no reason to modify Kemp's base offense level because such action would not affect his sentence, despite a retroactive amendment to the sentencing guidelines, and finding no abuse of discretion as to the remaining issues, we affirm the trial court in all respects.

I.

In July 1990 Kemp joined a cocaine distribution conspiracy that had been ongoing since 1988. He took the place of Duane Wilkey, who was killed in a drug related gun battle. Wilkey and Corey Jacobs were the leaders of the conspiracy, and Kemp became the new co-leader.

Jacobs and Kemp became leaders and organizers of a conspiracy that eventually distributed approximately 15 kilograms of cocaine per week in the Norfolk vicinity. They recruited a number of couriers to bring in drugs from New York City. Various other persons sold more than 50 guns to Kemp and his associates. Although there were occasional disputes among members of the conspiracy, and even instances in which street-level drug vendors competed against each other, the conspiracy continued unabated. The conspiracy ceased operation only with the arrest of Kemp and several others in September 1993.

Kemp, along with five codefendants, was indicted by a Norfolk grand jury on cocaine conspiracy charges. Kemp was indicted on 19

of 84 counts in the indictment and asserted his right to jury trial. His codefendants pled guilty. Kemp was arraigned on October 27, 1993, where he was represented by court-appointed counsel Robert Rigney. The court directed appointment of Rigney at the arraignment and set conditions in the event that Kemp should wish to retain other counsel. One condition was that any new counsel must have no conflict of interest in the case.

On October 27, Kemp filed to substitute William P. Robinson, Jr. as his attorney. The government moved to disqualify Robinson based on several actual and potential conflicts. First, Robinson also represented Norman Tyson, a codefendant on the same indictment but a fugitive at the time. Second, a partner of Robinson's, Junious Fulton, had previously represented Roman Grandy on a drug charge. Grandy was a codefendant but pled guilty and was cooperating with the government at the time of the disqualification. Grandy did in fact testify for the government. Third, the government expected at the time to call as a witness potential defendant Delton Raynor. Raynor was previously Robinson's client. Although Kemp offered to waive these conflicts, there is no evidence that Tyson, Grandy or Raynor made such an offer. The motion to substitute was denied by a magistrate judge and then affirmed by the district judge, both denials citing conflict of interest.

Kemp was convicted after a jury trial beginning December 29, 1993 and ending January 6, 1994. The district judge sentenced Kemp to life imprisonment with five years supervised release on four separate counts, with lesser concurrent sentences on the four remaining counts. The district judge based the sentencing in part on a calculation of Kemp's base offense level at 42, pursuant to the then-effective United States Sentencing Guideline § 2D1.1(c).

II.

Kemp makes six arguments in his appeal: (1) that the failure to substitute Robinson was so arbitrary as to violate his Sixth Amendment guaranty of the right to assistance of counsel; (2) that the trial court prejudiced his case by refusing to order production of an FBI "302" witness statement; (3) that he should not have received a four-level offense enhancement for his leadership role, pursuant to United

States Sentencing Guidelines § 3B1.1(a); (4) that he should not have received a two-level enhancement for possession of a firearm pursuant to § 2D1.1(b); (5) that the trial court erred when it refused to give a multiple conspiracy instruction to the jury; and (6) that a subsequent amendment to the sentencing guidelines allows his base offense level and sentence to be recalculated. Of these arguments, Kemp does not strongly argue the first four, and we find his arguments unpersuasive. We find that the trial court did not commit clear error or abuse its discretion as to issues (1) through (4), and as to these issues, the trial court is affirmed. As to the two remaining issues, we also affirm the trial court, but offer the following explanation of our analysis.

We first address Kemp's request for a multiple conspiracy jury instruction. A trial court's instruction will stand unless clearly erroneous. United States v. Mills, 995 F.2d 480, 485 (4th Cir. 1993). While the government bears the burden of proving a single conspiracy as charged in the indictment, a jury's finding of a single conspiracy must stand unless the evidence would not allow it even when viewed in the light most favorable to the government. See United States v. Hines, 717 F.2d 1481, 1489 (4th Cir. 1983); United States v. Baker, 985 F.2d 1248 (4th Cir. 1993).

As Kemp correctly states, a multiple conspiracy instruction is an instruction that the jury may find a defendant not guilty of the conspiracy charged even though they would otherwise find him guilty of another conspiracy. But contrary to Kemp's argument, United States v. Mills does not require that a defendant receive such an instruction each time there is but the slightest foundation in evidence, no matter how tenuous. See 995 F.2d at 485. The instruction is appropriate only if "supported by the facts." Id.

To Kemp's burdens of clear error and the presumption of facts favorable to the jury verdict, the law adds even a final hurdle to Kemp's appeal: proof of prejudice to his "substantial rights." Even where there is proof of multiple conspiracies, reversal is appropriate only where such proof prejudiced the substantial rights of the defendant. United States v. Barsanti, 943 F.2d 428, 439 (4th Cir. 1991). Substantial rights are infringed if the jury might have been confused into imputing guilt to members of one conspiracy because of the activities of other conspiracies and their members. Id.

4

The trial court correctly found that the facts did not support a multiple conspiracy jury instruction. Kemp was an organizer, the hub of the various spokes of the conspiracy, and minor disputes between the lower-ranking members did not serve to end or void the conspiracy as to him. Further, there is nothing to indicate impairment of Kemp's substantial rights. Kemp has failed to meet his heavy burden on this issue and we therefore affirm the trial court.

Second, we address the question of Kemp's proper base offense level. The trial court's application of sentencing factors will be reviewed for clear error. United States v. Brooks, 957 F.2d 1138 (4th Cir. 1992). The trial court may determine the facts of the case, for the purposes of sentencing, by a mere preponderance of the evidence. United States v. Vinson, 886 F.2d 740, 741-42 (4th Cir. 1989).

Kemp's sentencing argument involves two parts, one a dispute over the amount of cocaine involved and the other a dispute over the proper offense level calculation in light of a subsequent amendment to Guidelines § 2D1.1(c). As the amount of cocaine base was a factual issue at sentencing, the trial court needed only a preponderance of the evidence to find that Kemp was involved in the distribution of 1,314.04 kilograms of cocaine base. Reviewed on appeal only for clear error, this finding must be sustained; in fact, the trial court clearly made every effort to resolve disputed amounts in favor of the defendant. Regardless, in April 1994 the trial court need only have found 15 kilograms of cocaine base to put Kemp in the base offense level of 42. See United States Sentencing Commission, Guidelines Manual, Appendix C, Amendment 505. We affirm the trial court's factual findings.

The more interesting sentencing issue is the effect of Amendment 505. In a Presentence Report of March 1994 the United States Probation Officer calculated Kemp's base offense level at 42, at that time the proper offense level for 15 or more kilograms of cocaine base under § 2D1.1. The trial court used the same method in its sentencing of April 1994 and, after the two-level enhancement for firearms and four-level enhancement for leadership role, gave Kemp an adjusted offense level of 48. Since the Sentencing Table mandates a life sentence for any adjusted offense level higher than 42, Kemp received life imprisonment. See USSG Ch.5, Pt.A. However, on November 1,

5

1994, Amendment 505 became effective and reduced the highest base offense level in § 2D1.1 to 38. Kemp argues that § 1B1.10(c) makes the amendment retroactive, and that both his base offense level and sentence should now be recalculated.

We disagree. Guidelines § 1B1.10(a), governing subsequent modification of sentencing factors, reads in pertinent part:

> [w]here a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual . . . a reduction of the defendant's term of imprisonment is authorized under 18 U.S.C. § 3582(c)(2).

Title 18 U.S.C. § 3582(c)(2) provides:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment . . . .

Finally, Application Note 2 to § 1B1.10 explains that § 1B1.10 was drafted to implement 28 U.S.C. § 994(u), which reads in full:

> [i]f the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of the imprisonment for the offense may be reduced.

Taken together, these sections authorize a court to reduce the defendant's sentence where a subsequent amendment has changed the Guidelines in such a fashion that the range of possible sentences is lowered. But in Kemp's case, the range has not been lowered.

Although a new base offense level of 38 would not place Kemp in the automatic life sentence category he formerly occupied under the

6

Sentencing Table, his adjusted offense level would still do so. The adjusted offense level of 44, calculated by adding the base offense level to his two- and four-level enhancements, would still place Kemp off the chart and into a mandatory life sentence. Thus the change in § 2D1.1(c) is a reduction in neither the "guideline range" referred to in Guidelines § 1B1.10(a) nor the "sentencing range" of 18 U.S.C. § 3582(c)(2), because there is no "range." Whether his offense level is the former 48, or the possible 44, his only authorized sentence is life imprisonment.

This arithmetic raises two points. First, the authorization to apply retroactive amendments via § 1B1.10 is discretionary, not mandatory, as urged by Kemp. See United States v. Turner, 59 F.3d 481, 483 (4th Cir. 1995). Second, the three sections cited above clearly concern changes in actual sentence, not changes in the various base levels and adjustments that go into the calculation of sentence. We question whether the sections authorize a modification with no real effect. We conclude that retroactive modification does not apply to Kemp's case because a reduction in his base offense level would not affect his sentence. Modification would be a meaningless exercise. Therefore we decline to perform it and we affirm the trial court.*

III.

We conclude that none of the challenges raised by Kemp merit reversal. Therefore Kemp's conviction and sentence, and the judgment of the trial court, are affirmed in all respects.

AFFIRMED
_____
*Should Kemp wish to engage in such an exercise, the trial court is the proper forum in which to move for reconsideration of his sentence. Kemp may argue to the trial court that the possible reduction in base offense level makes a downward departure more feasible. However, a departure is an extraordinary action and is best left to the trial court's sound discretion. We will not assume such action for the purposes of this appeal.