**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-4806**

---

UNITED STATES OF AMERICA,

                                    Plaintiff - Appellee,

        versus

AHMAD H. HAMMOUD, a/k/a Sammy,

                                    Defendant - Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  James C. Cacheris, Senior District Judge. (CR-04-474)

---

Submitted: July 31, 2006          Decided: August 8, 2006

---

Before MICHAEL, MOTZ, and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Frank W. Dunham, Jr., Federal Public Defender, Michael S. Nachmanoff, Assistant Federal Public Defender, Sapna Mirchandani, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Paul J. McNulty, United States Attorney, Nicola J. Mrazek, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Following a bench trial, Ahmad Hussam Hammoud was convicted for conspiring to distribute 500 or more grams of a mixture containing cocaine. He was sentenced to 78 months' imprisonment. Hammoud appeals both his conviction and sentence, contending that the evidence was insufficient to sustain a guilty verdict and that a two-level sentencing enhancement for obstruction of justice, see U.S.S.G. § 3C1.1, was unwarranted. For the following reasons, we affirm.

I.

Hammoud owned a gift shop in Ft. Lauderdale, Florida, where he sold incense, lighters, knives, tasers, "all item[s] related to pipes," plastic bags, various types of cutting agent, scales, and other drug paraphernalia. J.A. 146. Hammoud first met Anthony Stroy in or about October 2003, when Stroy entered Hammoud's shop seeking "paraphernalia to help [him] distribute [his] cocaine." J.A. 36. Hammoud sold Stroy a $400 cocaine press and approximately $1400 in other goods, including electronic scales, roughly eight ounces of cutting agent, and roughly one thousand plastic baggies. (Cutting agent is used "to stretch cocaine" and increase the seller's profit, while a press, also called a compressor, is used to recompress cocaine once it is mixed with a cutting agent. J.A. 39.) Hammoud admits that he knew Stroy

2

was a drug dealer when he made these sales. Hammoud packaged and shipped the items to Stroy's address in Washington, D.C., in a box labeled "incense." J.A. 57. He instructed Stroy to identify the contents as "a dietary supplement" should the police question him about the shipment. Id. While Stroy was at Hammoud's shop, Hammoud advised Stroy on what types of cutting agent and what ratios of cutting agent-to-cocaine to use to augment profits without customers detecting any difference in drug quality. He offered to help Stroy mix and recompress any cocaine that Stroy had, but Stroy had none with him. While driving Stroy to the airport that same day or the next, Hammoud loaned Stroy a canning machine, a device that conceals drugs and masks their odor. He also offered to introduce Stroy to some local drug dealers he "dealt with [and] trusted" who could sell Stroy cocaine, though no introductions were ever made. J.A. 42.

Over the next several months, Hammoud mailed to Stroy six or seven more packages of cutting agent, each containing between eight and ten ounces. Hammoud did not insist on immediate payment from Stroy. He told Stroy to "just Western Union the money" when Stroy had it; Stroy ultimately ran up a bill of roughly $2700. J.A. 48. In late 2003 or early 2004 Stroy unwittingly sold cocaine to an undercover Drug Enforcement Agency (DEA) agent, Special Agent Robert Valentine. Stroy, who intended to "go into business" with Valentine, suggested that he and Valentine, with Hammoud's help,

3

"stretch the bricks [of cocaine] out and maybe make an extra $20,000 or so." J.A. 51. After Valentine expressed an interest in acquiring a press and cutting agent, Stroy called Hammoud to ask "if it would be okay if my friend [Valentine] gave him a call." J.A. 52. Hammoud agreed, and he and Valentine subsequently spoke by phone.

Hammoud never met with Valentine, however. He met instead with Valentine's associate, a government informant named Michael Papanicolas, in July 2004. Hammoud supplied Papanicolas with free samples of cutting agent, including one labeled "Greasy Snort" and another labeled "DW" for "Diamond White," and offered to take Papanicolas to his house to demonstrate how to mix and compress cocaine with the cutting agent. J.A. 70-71, 173-75. Hammoud further said that he knew drug dealers in the area. Hammoud used code words during this conversation: "incense" for cutting agent and "18-year-old girls" and "20-year-old girls" (meaning $18,000 and $20,000, respectively) to quote prices for kilograms of cocaine. J.A. 72-73. A week or two later, in August 2004, Papanicolas called Hammoud to order more cutting agent and a compressor. Papanicolas indicated that he was "trying to turn other drug dealers on to the mixture" and that he wanted to be able to "mix it" himself. J.A. 81. Hammoud advised Papanicolas to "put my incense with your incense" (mix the cutting agent with the cocaine, in other words); Hammoud also said that Valentine "could

4

show [Papaniocolas] how to do it," if need be.  J.A. 81-82. Papanicolas then sent Hammoud a money order, and Hammoud shipped the compressor and cutting agent to a post office box in Virginia. Hammoud and Papanicolas spoke by phone again in September 2004 to plan a trip to Florida for Papanicolas, during which Hammoud would sell him a canner and more cutting agent and introduce him to cocaine suppliers.

In December 2004 a grand jury in the Eastern District of Virginia returned a one-count indictment against Hammoud for conspiring to distribute 500 grams or more of a mixture containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Law enforcement officers arrested Hammoud in January 2005 and thereafter searched his shop, where they found "various cutting agents, baggies used to sell street-level narcotics, electronic scales, [and] various items . . .  used to conceal drugs for street-level narcotics dealers."  J.A. 133 (punctuation omitted). At the one-day bench trial in May 2005, the government presented testimony from four witnesses:  two DEA agents, Papanicolas, and Stroy, Hammoud's alleged co-conspirator turned government cooperator.  The government also introduced recordings of conversations between Hammoud and government agents (Stroy and Papanicolas) and physical evidence seized from Hammoud's shop. After the government rested, Hammoud filed a Rule 29 motion for judgment of acquittal, which the district court denied.  See Fed.

5

R. Crim. P. 29. Hammoud then testified as the only defense witness. The district court returned a guilty verdict, imposed a two-level sentencing enhancement for obstruction of justice, see U.S.S.G. § 3C1.1, and sentenced Hammoud to 78 months' imprisonment. Hammoud appeals.

II.

Hammoud challenges the sufficiency of the evidence supporting his conspiracy conviction. In evaluating a sufficiency challenge, we are obliged to sustain a guilty verdict "'if there is substantial evidence, taking the view most favorable to the Government, to support it.'" United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). We have defined "substantial evidence" as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. In conducting our review, we examine the cumulative weight of the evidence and leave undisturbed the factfinder's credibility determinations. See id. at 862-63.

The essential elements of the charged conspiracy are that: (1) an agreement to distribute cocaine existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily joined the conspiracy. See id. at 857. Because the gravamen of a conspiracy charge is the

6

agreement to violate the law, "not whether the conspirators have worked out the details of their confederated criminal undertakings," the government need not prove that a defendant knew all the details of the conspiracy. United States v. Mills, 995 F.2d 480, 484 (4th Cir. 1993); see also Burgos, 94 F.3d at 858. Moreover, knowledge and participation in the conspiracy may be proved by circumstantial evidence. United States v. Meredith, 824 F.2d 1418, 1428 (4th Cir. 1987).

The evidence shows an agreement between Hammoud and Stroy to distribute cocaine. (Because Papanicolas participated in the drug ring only after becoming a government agent, Hammoud cannot be convicted for conspiring with him. See United States v. Lewis, 53 F.3d 29, 33 (4th Cir. 1995).) Hammoud repeatedly sold Stroy materials used in cutting, weighing, preparing, and bagging cocaine -- overt acts that he committed knowingly and willingly. See Mills, 995 F.2d at 485 n.1 ("[E]vidence of a buy-sell transaction is at least relevant (i.e. probative) on the issue of whether a conspiratorial relationship exists."). Hammoud admits knowing that Stroy was a drug dealer when he sold Stroy the drug paraphernalia, and Hammoud's use of code words (for example, "incense" and "18-year-old girls") confirms this knowledge. Additionally, Hammoud instructed Stroy how to mix the cutting agent with the cocaine to increase profitability, directed Stroy to deceive the police about the cutting agent's composition and use, loaned Stroy a device to

7

transport and conceal drugs and cutting agent, extended him a line of credit, and offered to introduce him to local drug dealers. All of these actions advanced, or at least were intended to advance, the conspiracy's goal of distributing cocaine. See, e.g., United States v. Askew, 403 F.3d 496, 502 (7th Cir, 2005) (observing that sales on credit among alleged co-conspirators is common circumstantial evidence of a narcotics conspiracy). That Hammoud's sales of paraphernalia to Stroy increased as Stroy's drug sales increased is further evidence that Hammoud knowingly and willingly participated in the conspiracy. See Meredith, 824 F.2d at 1428 (holding that defendant's sales of cutting agent and glassine bags to co-defendants furthered the heroin conspiracy by increasing "the ring's narcotics sales," and finding that such evidence was sufficient to sustain the conspiracy conviction). Given Hammoud's obvious connection to the conspiracy, it is immaterial that he never sold cocaine himself, for he otherwise facilitated its sale. See United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993) ("It is of course elementary that one may be a member of a conspiracy . . . without taking part in the full range of its activities.").

For these reasons, we conclude that Hammoud's conspiracy conviction was supported by substantial evidence and therefore must stand.

Hammoud also challenges his two-level sentence enhancement for obstruction of justice based on perjury, U.S.S.G. § 3C1.1. This enhancement applies if the sentencing court finds by a preponderance of the evidence that the defendant (1) gave false testimony (2) concerning a material matter (3) with the willful intent to deceive rather than as a result of confusion, mistake, or faulty memory. United States v. Sun, 278 F.3d 302, 314 (4th Cir. 2002). We have cautioned that such an enhancement "does not automatically apply every time a defendant who testifies at trial is convicted," because a defendant's specific statements on the stand may have been true, not intentionally false, or immaterial. Id. (internal quotation marks and citation omitted). In evaluating an application of the guidelines, we review the district court's factual findings for clear error and its legal determinations de novo. Id. at 313.

Although Hammoud admitted knowing that Stroy was a drug dealer, he consistently denied all involvement in the drug distribution ring despite ample evidence that he knowingly attempted to increase the drug ring's profitability and facilitate the purchase, transport, and concealment of drugs. In particular, Hammoud testified that his cutting agent was worthless, merely carpet cleaner or "kitchen incense" that could not effectively be mixed with drugs. J.A. 172, 178. Stroy's and Papanicolas's

testimony directly contradicted this contention, as did Hammoud's own words recorded during his telephone conversations with both men. Hammoud further testified, contrary to Papanicolas's testimony and the telephone recordings, that the press could never be used for cocaine. Based on these denials, the district court determined that Hammoud gave false testimony that concerned material matters. Having further determined that Hammoud gave such testimony with "the intent to mislead," the district court imposed a two-level enhancement for obstruction of justice. J.A. 244; see U.S.S.G. § 3C1.1.

Hammoud's challenge to this enhancement is without merit. The district court did not err in finding that Hammoud committed perjury at trial. The materiality of Hammoud's testimony is, moreover, plain, as it concerned the heart of the case -- whether Hammoud was a knowing and willing participant in the conspiracy. We further leave undisturbed the court's finding of a willful intent to deceive because the district court was in the best position to judge Hammoud's credibility. See United States v. Jones, 356 F.3d 529, 537 (4th Cir. 2004); Sun, 278 F.3d at 314. Accordingly, we reject Hammoud's challenge to the sentence enhancement for obstruction of justice.

We therefore affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions

10

are adequately presented in the materials before the court, and argument would not aid the decisional process.

AFFIRMED